IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF TEXAS   OCT 1 8 2006
DALLAS DIVISION

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*MAMADOU DIALLO*   Petitioner, §
RPCF §
POB 877 Haskell, TX 79521 §
ALBERTO GONZALES §   A# 096435250
Attorney General §
§
JOHN SOURKARIS-Director §   CASE NO:_____.
Post Order Detention Unit, U.S. §
(ICE) §   CASE NUMBER   1:06CV01779
NURIA PRENDES-Director of §   JUDGE: Unassigned
Detention and §
Field Operations Dallas, Texas; §   DECK TYPE: Habeas Corpus/2255
(ICE) §
JILL WATSON-Warden of §   DATE STAMP: 10/18/2006
RPRDC

RECEIVED

## PETITION FOR WRIT OF HABEAS CORPUS: PURSUANT TO 28U.S.C. 2241

COMES NOW *MAMADOU DIALLO* and (Petitioner) respectfully file this petition of habeas corpus under *28 U.S.C 2241,* to secure his release from the Custody of Immigration and Customs Enforcement *(ICE)[1]*. In addition, Petitioner files this action in protection of his Due Process rights under the 5th Amendment to the Constitution of the United States. Petitioner has been detained since *APRIL 4th 2006*, in violation of his constitutional rights by reason that *ICE* has confined Petitioner longer than the "reasonable time" afforded them to effect his release in custody. Petitioner requests this Honorable Court to view his pleading under the mandates of **Haines vs. Kerner** *404 U.S. 519, 520 (1972)* (Pro se complaint held to less stringent standard than formal papers drafted by lawyers.)

---

[1] The Immigration and Customs Enforcement (ICE), formerly Immigration and Naturalization Services (INS), now interlaced with the Department of Homeland Security.

1

## CONCERNED PARTIES

Under the authority of Alberto Gonzales, acting Attorney General of the *United States*, *ICE* has detained Petitioner into the present time fraction. John T. Sourkaris, Director Post Order Detention Unit for *ICE* is the legal custodian of Petitioner. Nuria Prendes, interim Director of Detention and Field Operations with *ICE (Dallas District)*, is the Co-legal custodian of Petitioner along with Jill Watson, warden of Emerald Regional Jail and Detention Center *(ERJDC)* as direct custodian to Petitioner in confinement.

## JURISDICTION

This Court obtains jurisdiction pursuant to *28 U.S.C. § 2241*, the general grant of habeas authority to the District Courts. Petitioner's detention is under the direct jurisdictional authority of the District Court in the Dallas District which the Immigration Judge *(IJ)* has refused to grant him P.R bond or release in custody. This Court also retains jurisdiction pursuant to *8 U.S.C 1343* of the Immigration and Nationality *Act (INA), 8 U.S.C.A § 1101. Under Title 28 U.S.C 2241;* to redress the deprivation of rights and privileges and immunities secured to Petitioner guaranteed by his 1st Amendment. The Court has jurisdiction over this matter pursuant to rule *4(e)* of the Federal Rules of Civil Procedure, *Act 1, c12* of the United States Constitution (Suspension Clause) and Common Law.

This Court may also exercise its' jurisdictional authority pursuant to the Declaratory *Act, 28 U.S.C. 1652* and the decision of the Supreme Court in *INS v. St. Cyr, 533 U.S. 289 (2001)*, , *Calcano-Martinez v. INS 533 U.S. 348 (2001), and Zadvydas v. Davis, 533 U.S. 678 (2001),* to review the purely legal issues raised before the court.

2

## VENUE AND INTRA- DISTRICT ASSIGMENT

Petitioner is filing this petition in the district where the decision to continue detaining petitioner, is made, and where petitioner's custodian [**The Department of Homeland Security**] has its place of business and where the immigration proceedings took place.

## FACTUAL BACKGROUND

Petitioner is a citizen of **Guinea**, who was admitted in *US*. As a student through **New York** on *October 23, 2004* but petitioner was return back home without comment, petitioner was readmitted again as student through Houston on *November 9, 2004* after being tortured back home, because of his family affiliation in the political situation of *the* country and his membership in the student group (*AJEDEP*).Petitioner will be killed or imprisoned indefinitely, if he were ever to return in Guinea. Petitioner believes this because the regime has become more radical, brutal and paranoid in its relentless efforts to squelch and eradicate all forms of dissent and anyone who has a history of opposing it. Petitioner was later married to a US. Citizen on *May 1, 2005* they still have *3* steps children to take care of.

On *August 2004* he pled guilty in Tarrant County for resisting arrest, but he did time 3 months in two different institutions (Dallas, Fort -Worth).

Petitioner challenges his continued detention because it violates the states laws. Petitioner has been in custody for more than the required period stipulated by the constitution interpreted by the Supreme Court as to the reasonable period constitutionally viable to detain an alien during the post-removal period, see *8 U.S.C. § 1231(a) (1) (C)*.Petitioner was ordered removed by a final administrative affirmance decision by the INS officer without opinion by the Board of Immigration Appeals on *April 4, 2006*, based on the charge listed above, the petitioner still detained with no answer.

## STATEMENT OF LEGAL ISSUES

(1) **Whether Petitioner's continue detention, after his final Administrative order of deportation on *April 4, 2006* by the INS officer, and the length of Petitioner's detention is a violation of his *XIV* Amendment to the United States Constitution, the Fifth Amendment of Due Process Clause and the *VII* Amendment of the United States Constitution ;**

(2) **Whether Petitioner is eligible for release under Supervision in pursuant to *8 U.S.C. 1231 (a)(6).***

3

(3) **Whether, Petitioner has met his burden of cooperation in assisting the court to grant him withholding of removal against torture and to be release as soon as possible because he can't return in Guinea where he fears persecution.**

## LIBERAL CONSIDERATION

Petitioner invokes his 1st, 5th, and 14th Amendment rights to litigate grievance in this Court, and pleas assessment of this case with liberal consideration.  Petitioner as a Pro Se litigant invokes his rights under the protection attributable to Pro Se prisoners on their liberal pleadings as expressed in *Estelle Gamble, 429 U.S. 97 S. Ct. 285 50 L. Ed 2d 251 (1976); Woodall v. Foti, 648 F. 2d 268 (5th Cir. 1981); See also Fields v. U.S., 963 F. 2d 105 (6th Cir. 1992).*  Furthermore, the doctrine provides the Court to apply the law liberally with a clear duty to rule under the provisions or practice that would be most beneficial to the Petitioner, providing for the relief sought, which is most appropriate to serve justice, regardless of any legal misapplication(s) by the *Pro Se, party.  See Woodall, supra; see also, Haines v. Kesner, 404 U.S. 519, 30 L. Ed. 2d. 652, 92 S. Ct. 694 (1972); and Boag v. McDougall, 454 U. S. 364, 70 L. Ed. 2d. 551, 102 S. Ct. 700(1982).*

## EVIDENTIARY HEARING

Petitioner implores this Court to conduct an evidentiary hearing in this case, being it a necessity to develop the record before this Honorable Court for justifiable resolve of the factual disputes in question. There are several pathways of providing view to violations of Petitioner's 5th and 14th Amendment rights to the Constitution of the United States.  There is no "realistic chance" of Petitioner's removal by reason of his affiliation in the political situation of his country and his membership in the student group.

Petitioner humbly moves this Court to appoint counsel, should the Court grant the evidentiary hearing in accordance to rule *1(b), 8 (c),* Governing Rules of *§ 2254* cases in the United States District Courts.

## ARGUMENTS

Petitioner's complaint alleges grave constitutional errors, in and around the statutory construction governing continued detention of alien. Petitioners continue detention by the Department of Homeland Security *('DHS')* is unauthorized by the statues and a **violation** of his Due Process rights under the Fifth Amendment Equal Protection Clause and his constitutional rights under the Fourteenth *(XIV)* Amendment of the United States constitution.

Petitioner has a right to judicial intervention and this court has jurisdiction over this petition and complaint, pursuant to *28 U.S.C § 2241 (c) (3)* **(authorizing any person to claim in federal court that he or she is being held "in custody in violation of the constitution or laws of the United States).**

See *28 U.S.C § 2241*, which confers jurisdiction upon the federal courts to hear these cases. Thus, the availability of the writ of Habeas Corpus is guaranteed by the constitution, and may not be suspended expect where "in cases of Rebellion" *U.S Constitution Article 1, 9 cl. 2* (Suspension clause).

Petitioner hereby reasserts that he has exhausted his administrative remedies, and fully cooperated with the *DHS* by providing every needed document as required by *Title 8 of the U.S.C § 1231.*

Clearly, Petitioner has met his burden of cooperation and assistance, but his continued detention is well beyond the statutory *90-days* and *180-days* post-removal-period, this means that petitioner's detention is no longer presumptively reasonable, and his removal is not reasonably foreseeable see *Matter of Festus Okwilagwe v.INS,*

*US Dist Lexis 3596(NO. 3-01-CV-1416-BD,* In that case this Honorable court held that: "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely shrinks"; furthermore this Court concluded that *"section 1231* **as interpreted by *Zadvydas*, does not authorize the *INS* to detain the petitioner indefinitely"**; thus the court ordered that the petitioner be released on an order of supervision.

The Supreme Court has held that aliens can be detained beyond the *90-days* removal period only for "a **period reasonably necessary to bring about that alien's removal from the United States"**. *see*

5

*Zadvydas v. Davis*, *533 U.S 678, 121 S.Ct. 2491, 2498 150 L.ED. 2d 653 (2001).* Furthermore, the Supreme Court held that "**detention for up to six months after the removal order becomes final is "presumptively reasonable"**. *Id., 121S.Ct. at 2505.*

It is well past six *(6) months* after Petitioner's final order of removal by the INS officer who claim against petitioner for signing the weaver form for his deportation, during this period the petitioner made effort to be release in custody to fix his papers because his married to US.Citizen, Petitioner and apparently the "reasonable foreseeable future" factor has been well spent. The future could mean tomorrow or next century; and a reasonable foreseeable future as held by the Supreme Court in interpreting the statues that govern detention of removal alien is *"six-months"*.[Otherwise ten-years would be a reasonable foreseeable future for the Respondents].

The Petitioner is being detained by the Bureau of Immigration and Customs Enforcement *('BICE')* under the provisions of *8 U.S.C.§ 1231(a)(1)(A),* which provides [**quote: in part**]…..and the alien **may remain in detention**]; but the statute does not permit indefinite detention nor detention above a *180 days* after the initial *90 days* period. In a recent, decision that Supreme Court held that in *Matinez* and *Benitez, 543 U.S (2005).* The Supreme Court further held that "In light of that perceived ambiguity, the Court believed that a "**serious constitutional threat**" is posed by indefinite detention of alien who had been admitted (like the Petitioner in the present instance), to the country, *Id., at 699.* The Court interpreted the statute to permit only detention that is related to the statute's "basic purpose [of] effectuating a removal," *id., at 696-699.* "[O]nce removal is no longer **reasonably** foreseeable, continued detention is no longer authorized. *Id., at 699.*

The Court further held that the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release." *Id., at 701.*

Petitioner cooperated in every way necessary to effectuate his release for more than 6 *months* but he doesn't know why the INS is not ready to issue a document for his release at any reasonable significant

6

time. The petitioner affiliation in the political situation of the country and his membership of the student group make him a target and petitioner will be persecuted and put in prison for life, if he returns in Guinea. Petitioner's removal in a foreseeable future is **vague** and his continued detention has become unconstitutional and violates his rights under the Fifth Amendment Due Process Clause; therefore the Petitioner is demonstrating that there is no significant likelihood of his removal in a reasonable foreseeable future, since after his final administrative order of removal by the INS officer who claim that he sign the deportation *April 4, 2006.*

Petitioners continue detention by Respondents is based on flimsy or no excuses, and a careful orchestration to keep Petitioner in indefinite detention.

As Supreme Court had long since held that, **"a statute permitting indefinite detention of an alien would raise serious constitutional problems. The Fifth Amendment's Due Process Clause forbids the Government to "deprive[e]" any "person….. Of ….Liberty…. without due process of law". Freedom from imprisonment—from government custody,** detention, or other forms of physical restraint- lies at the heart of liberty that Clause protects. See *Matter of Foucha v. Louisiana, 504U.S 71,80 (1992);* there the Court held **"that government detention violates the Clause unless the detention id ordered in criminal proceeding with adequate procedural protections"**; *See also Matter of United States v.Salerno, 481 U.S 739, 746 (1987).*

*See also Zadvydas vs. Davis, 533 U.S. (June 28, 2001) see also Habtegaber V. Jenifer 213 F. supp 2d 792(E.D Mich. 2002).*

Several courts have found it unconstitutional and a violation, in circumstances where the detention appears permanent, open-ended or of indeterminate duration and no legal or practical possibility of release exists.

Petitioners continue detention and indefinite confinement should trigger this Court to invoke the substantive and procedural due process protections of the Fifth Amendment. Substantive due process which protects against violations of "fundamental liberty interests".

Applying the balancing test, several Federal district courts have declared *INA § 236(c)* and indefinite detention as unconstitutional and a violation of the procedural due process.

See *Martinez v. Greene;* there the Court held that "...<u>the provision violated procedural due process because the private interest was great, the risk of erroneous deprivation of the liberty was substantial</u>..." As noted by the Supreme Court in *Zadvydas v. Davis* that indefinite detention during the post-removal-period of non citizens is unlawful. As the government correctly asserts in *Matter of Oussama Ahamed Ayoub, 2005US Dist LEXUS 934 (9TH Cir.2005) 05-71484; that 8U.S.C. § 1231 (a) (3)* "only provides for supervised release if an alien is not removed within 90 days of an order of deportation. And, even when detentions extend beyond *90 days, Zadvydas, Benitez, Martinez* provides that continued detention under Section *1231 (a)(6)* for up to *6* months (from the date the order of removal becomes final) is a presumptively reasonable period of time to secure an alien's removal from the *United States.* The Supreme Court stated that it recognized the six-month period "for the sake of uniform administration in the federal courts." *Id.*

## SUMMARY OF ARGUMENTS

As discussed supra Petitioner has cooperated with the Respondents in every effort to facilitate his release in custody more *than 6 months*. Petitioner is neither a flight risk nor a threat to the community or to family members. Petitioner's detention is over *180 days* (six months removal period), Petitioner has family and community ties in the United States. Thus, continued detention of Petitioner is a violation of his *XIV* and *V* Amendment Clause of the Due Process and a constitutional infraction.

As the record of proceeding, involving Petitioners criminal case would attest that Petitioner could be trusted to fully comply with all conditions if released from custody. Petitioner was ordered by the United Sates District Court Judge to serve *3 months* on *August, 2004* for resisting arrest, Petitioner complied with the order and served time for that conviction in Tarrant county, Petitioner is in detention since *April 4, 2006* at Haskell Texas.

## CONCLUSION

Due to the foregoing, the Petitioner respectfully prays this Honorable Court to grant the Writ of Habeas Corpus.

<div style="text-align:right">

Respectfully Submitted

_____
**MAMADOU DIALLO**
**Rolling Plains**
**Detention Center**
**P. O Box 877**
**Haskell, TX  79521**

</div>

## APPLICATION OF LAW

A construction of the Amendments at issue that would entirely preclude review of a pure question of law by any Court would give rise to substantial Constitutional questions. *Article I, § 9, cl. 2,* of the Constitution provides: "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of rebellion or invasion, the public safety may require it." Because of the clause, some "judicial intervention in deportation cases" is unquestionably "required by the Constitution." ***Heikkila v. Barber, 345 U. S., 229, 235 (1953).*** Mandatory detention is unconstitutional. Petitioner has been held in detention without the right to an individualized P.R. bond, which deprives him of liberty in violation of substantive and procedural due process. See ***Martinez v. Greene, 28 F. Supp. 2d 1275 (D. Colo. 1998).*** Factors that affect bond determinations are manner of entry, length of time, eligibility for relief and if one is a danger to society.[2] Neither the service nor the *(IJ)* has proved based on reasonable substantial and probative evidence that Petitioner poses a danger to the public or is a flight risk. Under *Salerno,* a substantive due process violation can be found if:

- Congress intended the restriction to constitute a punishment;
- no non-putative, alternative purpose can be assigned it; or
- <u>It is excessive in relation to the legitimate goal it seeks to further.</u>

Applying the *Salerno Balancing* test, the majority of Courts found that mandatory detention without bail was *"excessive"* in relation on its purpose[3] and that the absence of a hearing impermissibly precluded an individual determination on suitability for release. The constitutional argument is that the mandatory detention provision of *INA § 236(c)* violates substantive and procedural due process by creating an irrefutable presumption that all non-citizens affected by the statutory provision are a threat to society and

---

[2] 8 U.S.C., 1226(a)
[3] (Protection of society and prevention of flight)

must be detained. In considering this argument, courts typically balance the factors identified in *Mathews v. Eldridge:*

- The private interest affected by the Government action;

- the risk of "erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

- "The Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

The substantive demands of due process necessarily go hand in hand with the procedural, and the cases insist at the least on an opportunity for a detainee to challenge the reason claimed for committing him *e.g. Hendricks, supra, at 357, 138 L. Ed. 2d. 501, 117 S.Ct. 2072* (stating that civil commitment was permitted only where "the confinement takes place pursuant to proper procedures and evidentiary standards"); *Foucha, supra, at 81-82, 118 L Ed 437, 112 S. Ct. 1780 {123 S. Ct. 1733}* (invalidating a statute under which "the State need prove nothing to justify continued detention"); *Salerno, supra, at 751, 95 L. Ed. 2d. 697, 107 S. Ct. 2095* ("The procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination"); *Addington, supra, at 427, 60 L. Ed. 2d. 323, 99 S. Ct. 1804* (requiring a heightened burden of proof "to impress the fact-finder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate commitments will be ordered.")

## STANDARD OF REVIEW

Neither the Zadvydas decision nor the statutes specify under what standard the courts should review the agency's custody determinations. The proper standard of review is the most deferential of standards, i.e. one that assesses whether the basis for the decision was facially legitimate and bona fide "as opposed to wholly irrational" *Fiallo v. Bell, 430 U. S., 787, 796 (1977); Kleindienst v. Mandel, 408*

11

*U. S., 552, 559, 563 (1998)*(applying an abuse of discretion standard to a court's assessment of whether the secretary of housing and urban development was "substantially justified" in his actions for the purpose of awarding attorney fees under the equal access to justice act).

There is no administrative mechanism in place for the appellant to demand a decision, ensure that a decision will ever be made, or appeal a custody decision that violates *Zadvydas,* as well international treaty obligations of which the United States of America is a signatory.[4] The International Covenant on Civil and Political Rights[5], to which the United States is a party, states, "anyone who is deprived of his liberty by arrest or detention shall be entitled to take proceedings before a Court, in order that a Court may decide without delay, on the lawfulness of his detention."

A statute permitting indefinite detention of an alien would raise a serious Constitutional problem. The 5th Amendment's due process clause forbids the Government to deprive any person of liberty without due process. Freedom from imprisonment from Government custody, detention or other form of physical restraint.....lies at the heart of the liberty that clause protects. ***See Foucha v. Louisiana, 504 U. S., 71, 80, 118 L. Ed. 2d 437, 112 S.Ct. 1780 (1992).***The Supreme Court said that Government detention violates the clause unless the detention is ordered in a criminal proceeding with adequate procedural protections. ***See United States v. Salerno, 481 U.S., 739, 95 L. Ed. 2d. 697, 107 S. Ct. 2095 (1987).*** Detention must not [constitute] impermissible punishment before [adjudication] but must instead be merely a non-putative regulatory measure.[6] **See** ***Zadvydas, 121 S. Ct. at 2498-99(***holding that civil detention in general requires special non punitive circumstances that outweigh detainee's liberty interest on freedom from physical restraint) citing ***Kansas v. Hendricks 521 U. S., 346, 356, 138, 501, 117 S. Ct 2072 (1997).*** An infringement of liberty on account of past acts may suggest that the purpose of the infringement may be punitive rather than regulatory. ***See Nestor 363 U.S., at 619-20.***

---

[4] See the **Geneva Convention Treaty**
[5] See International Covenant on Civil and Political Rights, Dec 16, 1966, 999 U.N.T.S 171, art, 9P4
[6] See *Martin* 467 U.S. at 269/*Accord Flores*, 507 U.S. at 303, *Salerno*, 481 U.S. at 747; *Hill*, 979 F. 2d at 990-91.

## TREATY OBLIGATIONS

The American Convention of Human Rights and Universal Declaration of Human Rights are in support for customary principals prohibiting prolonged arbitrary detention. *See Rodriguez-Fernandez v. Wilkingson, 654 F. 2d 1382, 1388 (10th Cir. 1981)*. Nothing in the Constitution, or in the Chief Justice Marshall's (Foster) opinion, suggested that treaties which the constitution declares to be the law need not be faithfully executed by the President, or enforced by the court, because the President, or the senate (Or both) so decided. Reported *Note 5, see id at §115 (J)(b)*("that a rule of international law or a provision of an international agreement is superceded as domestic law does not relieve the United States of it's international obligations or of the consequences of a violation of that obligation"). Aliens are entitled to the same protection as citizens. "In the exercise of its' broad power over *INS*, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathew v. Diaz, 426 U. S., 67, 79-80 (1976)*

*INS* regulations add that the director will initially review the alien's record to decide whether further detention or release under supervision is warranted after the *90 days* removal period expires, *see 8 C.F.R. § 241.4 (c)(1),(h),(k)(l)(i)(2001)*. If the director's decision is unfavorable to the detainee, the panel will review the matter further at the expiration of a *3 months* period or soon thereafter on basis of record or possible personal interview *§ 241.4(i)*. In making the decision, the panel will consider for example, the alien's disciplinary record, criminal record, mental health reports, history of flight, prior immigration history and favorable factor such as family ties *§ 241.4 (f)*.
To shift the burden to the Government, Petitioner must demonstrate that the circumstances of his status, or existence of particular barriers with repatriation to his country of origin are such that there is no significant likelihood of removal in the foreseeable future *(citing Fahim v. Ashcroft, 227 F. Supp 2d. 1359, 1366 (NDGA 2002)*.

The courts have found argument supporting the unconstitutionality of indefinite, open-ended, or indeterminate duration of detention. It is excessive compared to goals that it was meant to achieve

namely, to prevent flight risk and to protect the community. As one Court noted the provisions "complete lack of any process by which to determine whether detention is in fact warranted, or is excessive in light of the non citizen's individual circumstances which result in indefinite detention with no opportunity for release until the deportation proceeding is complete interferes with our concept of ordered liberty." A non-citizen can be detained based solely on an assumption that he or she might commit a crime or he or she is likely to flee or present a danger to the community, which violates substantive due process rights. Finally, release may not be denied because of bias or for other improper reasons. Explicit bias violates due process as doe's punitive or arbitrary government action. In addition, courts have responded to "structural bias" claims, finding that the political and community pressures on *INS* district directors make it difficult for them to provide individualized and impartial custody determinations. One case involved the long-term detention of a *22-year* old Laotian refugee who had entered the United States at age five. The man had been sentenced to a two year jail term with 18 months suspended. During the pendency of his deportation proceeding, the *INS* had released him on bond and he had "complied with all bond requirements, worked productively, and proved that he [was] not a threat to the community." Following the order of deportation, however, the district director denied his release request. In overturning that decision and ordering an individualized bond hearing, the court found the district director's written decision "inadequate" and a violation of due process.

In *Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct 2491, 2498, 150 L. Ed. 2d 653 (2001)* discussion of detention for up to *six months* after the removal order becomes final was deemed as "presumptive reasonable" *id., 121 S. Ct. at 2505.* After time: once the alien provides good reason that there is no significant likelihood of removal in the reasonable foreseeable future, the government must respond with evidence sufficient to rebut that showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonable foreseeable future" conversely would have to shrink.

If the Federal Court determines that the removal is not "reasonably foreseeable" the alien should be released from custody subject to conditions of supervised release that are appropriate in the circumstances" *Id at 2504.* Of course, the alien may be returned to custody if he violates any of those conditions. *Borrero v. Aljets, 178 F. Supp. 2d 1034, 1044 (D. Minn. 2001)*(granting habeas relief to alien more than *90 days* after expiration of post-removal period, subject to conditions *INS* deems appropriate); *John v. Aljets, 162 F. Supp. 2d 1086, 109091 (D. Minn. 2001)*(same, but remanding case to *INS* for consideration under standard set forth in *Zadvydas*).[7] For Respondents to continue to Detain Petitioner for minor reasons are best interpreted as punitive. The short maximum duration of most pretrial detention statutes is significant.[8] Special solicitude is required because the writ is intended to be a "swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia, 372 U.S., 391, 400, 9 L. Ed. 2d 837, 83 S. Ct. 822 (1963);*[9]

Accordingly the statue itself directs courts to give petitions for habeas corpus "special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson, 216 F. 2d. 735, 737-38 (9th Cir. 1954).*

---

[7] See also the Supreme Court decision of *Clark v. Martinez, 03-878* and *Benitez v. Rozo, 03-7434*, which suggested that the 6 months period is the reasonably necessary time to effect removal, (which has passed).
[8] See *Martin, 467 U. S., at 270* (17 days) *United States v. Edwards, 430 2d 1321 (DC App 1981)(en banc)* (60 days)
[9] See also *Johnson v. Avery, 393 U.S., 483, 485, 21 L. Ed. 2d. 718, 89 S. Ct. 747 (1969)* (noting that the Supreme Court has constantly emphasized the fundamental importance of the writ).

## **PRAYER AND CONCLUSION**

Wherefore, premises established, Petitioner PRAYS that this Honorable Court grant relief and immediate release of the Petitioner from *ICE* custody under appropriate and reasonable conditions along with any other relief this Honorable Court deems necessary to ensure the colors of equity are adequately painted.

Respectfully Submitted,

_____
**MAMADOU DIALLO**

**P.O. Box 877**
**Haskell, TX 79521**

**<u>CERTIFICATE OF SERVICE</u>**

I, ***MAMADOU DIALLO*** Petitioner, swear that a true and correct copy of this Habeas Corpus was sent to the district counsel's office via mail through the mail handler at Emerald Regional Jail and Detention Center on this day of ***September 29, 2006*** to:

**District Counsel's Office**
**P.O. Box 561363**
**Dallas, TX 75242**

**MAMADOU DIALLO**
**118 county rd, #206**
**P.O.Box 877**
**Haskell, Texas 79521**